UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOHN CARLSON, | No. 2:13-cv-0766 AC P |
| Plaintiff, | |
| v. | <u>ORDER</u> and |
| BRIAN DUFFY, et al., | <u>FINDINGS AND RECOMMENDATIONS</u>[1] |
| Defendants. | |

I. <u>Introduction</u>

Plaintiff is a state prisoner at the California Medical Facility (CMF), who proceeds pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983 and 38 U.S.C. § 5301(a)(1) (establishing non-assignability of Veterans Benefits). Plaintiff challenges payments for legal copies withdrawn from Veterans Disability Benefits (VDB) deposited in his Inmate Trust Account (ITA). This action proceeds against five defendants: CMF Warden B. Duffy, CMF Associate Warden C. Tileston, CMF Accounting Supervisor U. Hill, Appeals Chief J.D. Lozano, and Appeals Examiner D. Artis. Plaintiff seeks reimbursement, punitive damages, and an order directing the CMF Accounting Office to refrain from making similar withdrawals from his VDB deposits in the future.

---

[1] This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262.

1    Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil
2    Procedure on the grounds that:  (1) the subject withdrawals complied with applicable law; (2) no
3    defendant personally participated in the subject withdrawals; and (3) defendants are entitled to
4    qualified immunity.  Memorandum in Support of Motion for Summary Judgment (MSJ), ECF
5    No. 23-1.  Plaintiff opposes each of defendants' arguments based on his contention that the
6    subject withdrawals were in violation of 38 U.S.C. § 5301(a)(1), as construed by the Ninth Circuit
7    Court of Appeals in Nelson v. Heiss, 271 F.3d 891 (9th Cir. 2011).  Memorandum in Support of
8    Opposition (Opp'n), ECF No. 27-1.  Defendants' motion was submitted for decision on the
9    papers on August 5, 2014, upon the filing of defendants' reply, ECF No. 28.  See Local Rule
10   230(l).[2]

II. Legal Standards for Rule 56 Motions

12   Summary judgment is appropriate when the moving party "shows that there is no genuine
13   dispute as to any material fact and the movant is entitled to judgment as a matter of law."
14   Fed.R.Civ.P. 56(a).  Under summary judgment practice, the moving party "initially bears the
15   burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities
16   Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323
17   (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the
18   record, including depositions, documents, electronically stored information, affidavits or
19   declarations, stipulations (including those made for purposes of the motion only), admission,
20   interrogatory answers, or other materials" or by showing that such materials "do not establish the
21   absence or presence of a genuine dispute, or that the adverse party cannot produce admissible
22   evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).
23   When the non-moving party bears the burden of proof at trial, "the moving party need
24   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle
25   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed.R.Civ.P. 56(c)(1)(B).

---

[2]  Three months later, on November 14, 2014, plaintiff filed an "Amended Memorandum of Points and Authorities."  ECF No. 30.  The Local Rules do not authorize the filing of a surreply, and the court did not request one.  Therefore, defendants' objections, ECF No. 31, are sustained, and plaintiff's "Amended Memorandum," ECF No. 30, is disregarded.

1  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
2  against a party who fails to make a showing sufficient to establish the existence of an element
3  essential to that party's case, and on which that party will bear the burden of proof at trial. See
4  Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
5  nonmoving party's case necessarily renders all other facts immaterial." Id. In such a
6  circumstance, summary judgment should be granted, "so long as whatever is before the district
7  court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

8      If the moving party meets its initial responsibility, the burden then shifts to the opposing
9  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
10 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
11 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
12 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
13 admissible discovery material, in support of its contention that the dispute exists. See
14 Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate
15 that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under
16 the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.
17 Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the
18 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
19 nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).

20     In the endeavor to establish the existence of a factual dispute, the opposing party need not
21 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
22 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
23 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
24 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
25 Matsushita, 475 U.S. at 587 (citations omitted).

26     "In evaluating the evidence to determine whether there is a genuine issue of fact," the
27 court draws "all reasonable inferences supported by the evidence in favor of the non-moving
28 party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is

the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898, 902 (9th Cir.1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

III.  Facts

The parties agree that the following facts are undisputed,[3] or the record before the court so demonstrates.  Relevant disputed facts are also noted.

- At all times relevant to this action, plaintiff was incarcerated at CMF.
- Plaintiff previously served in the United States Marine Corps.  While incarcerated, plaintiff receives monthly VDB which are deposited directly into his ITA.  In September 2012, these monthly deposits were in the amount of $63.50.  MSJ, Ex. A, Carlson Deposition (Pl. Dep.) at 24:24-26:4; 26:8-17; 31:12-18.
- On September 4, 2012, VDB in the amount of $63.50 was deposited into plaintiff's ITA.  Id. at 27:8-28:11; see also MSJ, Ex. B, Plaintiff's CDCR Inmate Trust Account Statement Report (Inmate Statement) (Pl.'s Trust Acct. Stmt.), ECF No. 28-2 at 34.
- After the deposit of September 4, 2012, the balance in plaintiff's ITA totaled $63.50, and consisted entirely of plaintiff's VDB deposit.  At all relevant times in this action, plaintiff's ITA was funded solely by his VDB deposits.  Pl. Dep. at 31:19-23; Pl.'s Trust Acct. Stmt., ECF No. 28-2 at 34.
- On September 5, 2012, plaintiff completed a Trust Account Withdrawal Order/CDC Form 193 (Withdrawal Order) authorizing the withdrawal of $44.40 from his ITA for the purchase of food items from the CMF canteen.  The withdrawal was processed immediately.  Therefore, as of September 5, 2012, plaintiff had a balance of $19.10 in his ITA.  Pl. Dep., Exhibit A, at 28:12-29:20: Pl.'s Trust Acct. Stmt., ECF No. 28-2 at 34.

---

[3]  See Defendants' Statement of Undisputed Facts (DSUF), ECF No. 23-2 at 1-4 and attached exhibits; see also Plaintiff's Statement of Disputed (PSDF) (which contains both undisputed and disputed facts), ECF No. 27-2 at 1-5 and attached exhibits.

1        • Plaintiff testified at his deposition that the September 5, 2012 withdrawal of $44.40
2    from his ITA, though taken from his VDB, was proper because it reflected plaintiff's intent as set
3    forth on his completed Withdrawal Order and was taken from available funds deposited on
4    September 4, 2012.  Pl. Dep. at 29:3-17, 31:24-32:13.

5        • Plaintiff avers that, on September 14, 2012, he submitted a Withdrawal Order
6    requesting that a check in the amount of $19.10 be sent to a Mr. Thomas Allread.[4]  See PSDF at ¶
7    9; Pl. Dep. 38:9-14; ECF No. 27-2 at 98.)  Plaintiff believed that the submission of this request
8    would deplete the balance of his ITA to zero on the date requested, September 14, 2012.  PSDF at
9    ¶ 11.

10       • On September 21, 2012, the CMF Accounting Office issued the $19.10 check requested
11   by plaintiff, which then reduced the amount in plaintiff's ITA to zero.  See Pl.'s Trust Acct. Stmt.,
12   ECF No. 28-2 at 34.

13       • Meanwhile, on September 19, 2012, plaintiff went to the law library where he signed a
14   Withdrawal Order to pay for legal copies.  MSJ, Ex. C (Withdrawal Order dated Sept. 19, 2012),
15   ECF No. 23-2 at 37; Carlson Dep. at 32:17-24, 33:6-34:10.  Plaintiff avers that he left the amount
16   blank, see PDF ¶ 8; defendants state that plaintiff signed the Withdrawal Order in the amount of
17   $6.80, DSUF ¶ 8; in any case, the submitted Withdrawal Order was in the amount of $6.80, see
18   MSJ, Ex. C (Withdrawal Order dated Sept. 19, 2012).

19       • Plaintiff testified that, when he went to the law library on September 19, 2012, he
20   believed that the balance in his ITA would be zero by virtue of his September 14, 2012 request
21   for issuance of the $19.10 check to Mr. Allread.  On that basis, plaintiff believed that he would be
22   exempt from charges for the legal copies under 38 U.S.C. § 5301, and Nelson, supra, 271 F.3d
23   891.  Pl. Dep. at 38:9-40:16.

24       • On September 26, 2012, plaintiff again went to the law library where he signed a
25   Withdrawal Order to pay for legal copies in the amount of $9.30.  MSJ, Ex. C (Withdrawal Order

---

[4] A copy of this Withdrawal Order was submitted to the court for the first time as an attachment to plaintiff's opposition.  See Opp'n, Ex. G, ECF No. 27-2 at 98.  In their Reply, defendants acknowledge the belated submission of the exhibit but do not dispute its authenticity.  See ECF No. 28 at 3.

dated Sept. 26, 2012), ECF No. 23-2 at 37.  Plaintiff testified that, when he went to the law library on September 26, 2012, he believed that the balance in his ITA remained zero by virtue of his September 14, 2012 request for issuance of the $19.10 check to Mr. Allread, and that plaintiff would be exempt from charges for the legal copies he requested that day.  Pl. Dep. at 38:9-40:16.

- On October 3, 2012, VDB in the sum of $63.50 was deposited into plaintiff's ITA. See Pl.'s Trust Acct. Stmt., ECF No. 28-2 at 34; Pl. Dep. at 41:24-42.
- On October 4, 2012, the CMF Accounting Office processed withdrawals from plaintiff's Trust Account in the amounts of $6.80 and $9.30, for payment of legal copies requested, respectively, on September 19, 2012 and September 26, 2012.  Pl. Dep. at 41:18-23; Pl.'s Trust Acct. Stmt., ECF No. 28-2 at 34.
- On October 15, 2012, and again on October 28, 2012, plaintiff submitted an administrative grievance challenging the $6.80 and $9.30 withdrawals from his ITA.  The grievance, summarized below, was denied at the Third Level in March 2013.
- On December 10, 2012, the amount of $9.30 was refunded to plaintiff's ITA.  Pl. Dep. at 47:14-17; Pl.'s Trust Acct. Stmt., ECF No. 28-2 at 34.
- On April 19, 2013, plaintiff commenced this action by filing the operative complaint. ECF No. 1.  Pursuant to this action, plaintiff seeks the following relief:  (1) an order directing the CMF Accounting Office to "stop attaching future V.A. Benefits;" (2) an order directing the CMF Accounting Office to "replace the $6.80 that was removed from [plaintiff's] future V.A. Benefits;" and (3) a punitive damages award "in the amount of $600.00 with the daily compounded interest to the $6.80 from the date it was taken until paid full along with the punitive damages." Id. at 4.
- In May or June 2013, the amount of $6.80 was refunded to plaintiff's ITA.[5]  Pl. Dep. at 47:21-24; 48:12-13.

---

[5] The precise date of this refund has not been provided.  Although defendants cite to plaintiff's ITA Statement, see DSUF ¶ 25 (citing Ex. B), this refund is not included in the portion of the statement that was submitted.  Nevertheless, plaintiff concedes that the refund was made in May or June 2013.  Pl. Dep. at 47:21-24; 48:12-13.

IV. Plaintiff's Administrative Grievance

In October 2012, plaintiff submitted an administrative grievance (Log No. CMF-12-M-2727) challenging the withdrawal of funds from his ITA to pay for the legal copies he requested on September 19, 2012 and September 26, 2012. Cmpl., ECF No. 1 at 5-8, 14. Citing Nelson v. Heiss, supra, 271 F.3d 891, and CDC Financial Information Memo (FIM) No. 2002-03, plaintiff asserted that the withdrawals were illegal because plaintiff had been denied the use of his anticipated VDB, and sought "the payment of two hundred dollars of canteen items of [plaintiff's] choosing for CMF's negligent deprivation of V.A. Disability Compensation Benefits." Id. at 7.

On November 26, 2012, plaintiff was interviewed by defendant Hill, CMF Acting Accountant I Supervisor, who conducted an investigation of the pertinent transactions and related documents in plaintiff's ITA. Defendant Hill's findings were reviewed by defendant Tileston, CMF Associate Warden for Business Services, who partially granted plaintiff's grievance in a First Level Appeal Response. See MSJ, Ex. D (Hill Decl.), ECF No. 23-2 at 39-40; and id., Ex. E (Tileston Decl.), ECF No. 23-2 at 42-3. Tileston found that the October 4, 2012 withdrawal of $6.80 was authorized by plaintiff's September 19, 2012 Withdrawal Order, and the withdrawal "was within the 30-day time frame for funds to be taken from the appellant's Trust Account." Cmpl., ECF No. 1 at 9 (First Level Appeal Response to Log No. CMF-12-M-2727). Tileston relied on the following authority:

> Pursuant to FIM Number 2002-03: Nelson v. Heiss, it also states "If funds from the exempt deposit are already on the inmate's trust account, and you receive an inmate authorized charge, you may deduct the charge from the trust account balance."

However, Tileston ordered a refund of the October 4, 2012 withdrawal of $9.30 for legal copies made September 26, 2012, due to the lack of documentation (at that time) that plaintiff had completed a Withdrawal Order.[6] Id.

Plaintiff expressed dissatisfaction with the First Level Appeal Response. He asserted that his September 14, 2012 request for issuance of a check to Mr. Allread depleted the funds in his

---

[6] Defendants subsequently located a copy of the September 26, 2012 Withdrawal Order, as it is an exhibit to their Motion for Summary Judgment. See MSJ, Ex. C, ECF No. 23-2 at 37.

7

---

account to zero. Hence, he argued, there were no funds available to pay for his requested legal copies, and the withdrawal of funds on October 4, 2012 to pay those expenses was improper because taken from plaintiff's "future benefits." Id. at 8.

On December 28, 2012, defendant Tileston, acting on behalf of defendant Duffy, CMF Warden, issued a Second Level Appeal Response, partially granting plaintiff's grievance. The response noted that, on December 10, 2012, plaintiff was refunded the $9.30 for his September 26, 2012 copy expenses, due to the lack of supporting documentation. Id. at 10. Defendant maintained that the $6.80 charge was appropriate, reasoning that, at the time plaintiff completed his Withdrawal Order on September 19, 2012, he had sufficient funds to cover the requested charge, specifically, a balance of $19.10, which was not withdrawn from plaintiff's ITA until September 21, 2012, despite plaintiff's September 14, 2012 request. Id.

Plaintiff objected to the Second Level Appeal Response, again emphasizing that the withdrawals from his ITA in October to pay September expenses were improperly taken from his "future benefits." Id. at 6.

On March 4, 2013, a Third Level Appeal Decision was issued by defendant D. Artis, CDCR Appeals Examiner, and defendant J.D. Lozano, Chief, CDCR Office of Appeals. Plaintiff's grievance was denied on the following grounds:

> Acting Accounting I Supervisor U. Hill . . . concluded that a hold was never placed upon the appellant's account and at the time of the appellant's approval of the CDC 193 to remove the funds from his account, he had sufficient funds. . . . CMF did not take future funds from the appellant but on October 4, 2012, the appellant's CDC 193 was processed and the funds were deducted. This transaction was not in violation of the court case Nelson v. Heiss, which holds that VA benefits like Social Security Benefits cannot be used by this Department to recover court order[ed] restitution or any other holds."

Id. at 12-3.

V. Governing Legal Principles

Section 5301(a)(1), U.S.C., Title 38, provides in pertinent part:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to,

> or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 5301(a)(1). An alleged violation of federal statutory rights under 38 U.S.C. § 5301(a)(1) may be pursued as a civil rights action under 42 U.S.C. § 1983. See Higgins v. Beyer, 293 F.3d 683, 689-90 (3rd Cir. 2002) (New Jersey statute authorizing collection of victims' restitution assessments from inmate trust accounts void to the extent that it allowed deduction of funds from inmates' veteran's disability benefits).

In the Ninth Circuit, Section 5301(a)(1) has been construed to preclude prisons from placing insufficient-fund "holds" on a prisoner's trust account when the only anticipated funds for satisfying the prison's Withdrawal Order are Veterans Benefits. In Nelson v. Heiss, supra, 271 F.3d 891, Nelson, a state prisoner, funded his ITA solely with VDB deposits. Nelson submitted two Withdrawal Orders which sought, respectively, payment for copies of his medical records ($11.70, submitted Sept. 25, 1996), and payment for dental appliances ($193.20, submitted Oct. 31, 1996). "At the time, he did not have funds in the account to cover those purchases, but the prison did not 'bounce' his withdrawal orders. Rather, it granted what it saw as a kind of overdraft protection, provided the goods and services, and placed a hold on the account so that it could be repaid when funds did arrive." Nelson, 271 F. 3d at 893. As characterized by the Court of Appeals, "[e]ven though Nelson himself had asked for the goods and services and authorized the withdrawal, he complained that the prison could not legally accommodate him in that way because the funds in question came from veteran's benefits." Id.

Construing similar protections accorded Social Security benefits, the Ninth Circuit concluded that Nelson could not "consent" to the withdrawal of anticipated funds. "[T]o the extent that the Prison Officials consider Nelson's drawing on his account when it has insufficient funds to be consent to a hold on, and assignment of, future veteran's benefits, they cannot deflect his disavowal of that by chanting 'overdraft protection.'" Nelson, 271 F.3d at 895. Accordingly, the Court of Appeals held that "§ 5301(a) precludes the Prison Officials from placing holds on Nelson's account," but "does not preclude Nelson from directing that payments be deducted from

funds which exist in his account at the time that he issues the direction. Nothing we say here precludes him from currently spending the benefits he has received." Id. at 896 (fn. omitted). Finally, the Court of Appeals concluded, based on the prior lack of clear authority, that defendants were entitled to qualified immunity as to plaintiff's damages claim. Id.

On September 3, 2002, in response to Nelson, CDCR (then California Department of Corrections (CDC)) issued CDC Financial Information Memo (FIM) No. 2002-03, entitled "Government Benefit Payment Checks Exempt From Restitution, Holds, Liens, and Attachments," which was based on "Legal Opinion No. 2002-00-0259," issued by CDC's Legal Affairs Division. The Memo was authored by Wendy Still, Deputy Director of the Financial Services Division, and directed, inter alia, to CDCR Institution Accounting Office Managers and Institution Trust Offices. See Cmpl., ECF No. 1 at 15-8. CDC FIM No. 2002-03 provides in pertinent part:

> As a result of inmate litigation, the Ninth Circuit Court of Appeals has ruled that the Department of Corrections (CDC) is in violation of Title 38 [§] 5301. The court held that CDC cannot enforce inmate trust account holds against future payments from the Veterans Administration (VA). . . . Accordingly, any prohibited deductions made from these benefit deposits will be refunded when requested by the inmates.
>
> . . . Please use transaction code D202, Exempt Deposit, when depositing funds from these sources. . . . [T]hese types of deposits cannot be used to pay or cover existing holds, liens or attachments. This means that if a hold is on an inmate trust account and the inmate receives VA benefit payments checks, the hold cannot be deducted from the VA benefit payment deposits. . . . If funds from the exempt deposit are already on the inmate's trust account, and you receive an inmate authorized charge, you may deduct the charge from the trust account balance. . . .

Id. at 16.

VI. Analysis

As previously noted, plaintiff seeks a refund of the October 4, 2012 debit to his account in the amount of $6.80, which was deducted in response to plaintiff's September 19, 2012 Withdrawal Order[7]; interest on that amount from the date of debit (October 4, 2012) until the date

---

[7] This aspect of plaintiff's claim is moot, plaintiff having received a refund.

10

of refund (May or June 2013); punitive damages; and permanent injunctive relief directing the CMF Accounting Office to "stop attaching future V.A. Benefits." Compl., ECF No. 1 at 4. Defendants move for summary judgment on the grounds that no defendant personally participated in the conduct challenged by plaintiff; the challenged conduct complied with applicable law; and defendants are entitled to qualified immunity.

### A. No Personal Participation

A claim under Section 1983 will not survive summary judgment if the non-moving party presents no evidence supporting a reasonable inference that there was an actual connection or link between the defendants' challenged conduct and the alleged deprivation of plaintiff's constitutional or statutory rights. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knew or reasonably should have known would cause others to inflict the injury. Id. at 743–44. When an inmate seeks money damages, as opposed to injunctive relief, the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. See Leer, 844 F.2d at 633. Sweeping conclusory allegations will not suffice to prevent summary judgment. Id. at 634.

In the present case, plaintiff challenges the processing of deposits and withdrawals in his ITA by the CMF Accounting Office. He has named the defendants in this action only because they responded to plaintiff's subject administrative grievance. Specifically, in the First Level Appeal Response to plaintiff's grievance, defendant Hill, CMF Accounting Supervisor, investigated the relevant transactions in plaintiff's ITA and advised defendant Tileston, CMF

1  Associate Warden for Business Services, that the subject withdrawals complied with CDC FIM
2  No. 2002-03 and Nelson.  Thereafter, defendant Tileston, acting on behalf of defendant Duffy,
3  CMF Warden, issued a Second Level Appeal Response, again partially granting plaintiff's
4  grievance on the same grounds.  Finally, defendant D. Artis, CDCR Appeals Examiner, and
5  defendant J.D. Lozano, Chief, CDCR Office of Appeals, denied plaintiff's grievance in a Third
6  Level Appeal Decision.

7  Plaintiff does not allege, and has presented no evidence supporting a reasonable inference,
8  that any of the defendants personally participated in the challenged withdrawal of $6.80 from
9  plaintiff's ITA.  Nor does the evidence support a reasonable inference that defendants Hill,
10 Tileston or Duffy directed the withdrawal, although each held supervisory positions.  Hence,
11 plaintiff has failed to demonstrate that the challenged withdrawal was made as a result of any
12 defendant's conduct or failure to act.  See Johnson, supra, 588 F.2d at 743 (Section 1983 liability
13 requires that defendant's affirmative act or omission caused the alleged injury).  Rather, plaintiff
14 has named these defendants only because they each responded to plaintiff's administrative
15 grievance.  However, because prisoners are not entitled to prison grievance procedures as a matter
16 of course, a claim that prison officials failed to resolve a particular grievance in a favorable
17 manner is not cognizable under Section 1983.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
18 1988), cert. denied, 488 U.S. 898 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

19 In the absence of evidence that any defendant personally participated in the conduct
20 challenged by plaintiff , this court finds that summary judgment should be granted on behalf of all
21 defendants on plaintiff's damages claims.  Even if plaintiff's allegations could reasonably be
22 construed to state a cognizable Section 1983 damages claim against any defendant, qualified
23 immunity would preclude recovery, for the reasons set forth below.

24 The court further notes that plaintiff seeks injunctive relief that cannot be had from the
25 named defendants.  At no time has plaintiff named a defendant capable of systemically addressing
26 the alleged statutory violation.  See Hartmann v. Cal. Dept. of Corr. & Rehab., 707 F.3d 1114,
27 1127 (9th Cir. 2013) (inmate seeking injunctive relief must name as defendant, in his or her
28 official capacity, the state official who can appropriately provide the relief requested); Nelson,

271 F.3d at 897 (CDC Director must be named as defendant in order to challenge the alleged "system-wide problem").[8]

### B. Qualified Immunity

Alternatively, defendants move for summary judgment on the grounds that their conduct complied with applicable law and/or that defendants are entitled to qualified immunity. Because neither the plain language of 38 U.S.C. § 5301(a)(1) nor the Ninth Circuit's decision in Nelson clearly prohibits the action complained of here, and because the defendants acted in conformity with the Legal Opinion of the CDCR's Legal Affairs Division, the undersigned concludes that the defendants are entitled to qualified immunity.

Qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

By its terms, 38 U.S.C. § 53(a)(1) provides that Veterans Benefits "shall be exempt from the claims of creditors, and shall not be liable to attachment, levy or seizure. . ." The Ninth Circuit has interpreted this language to prohibit the placement of insufficient-funds holds on inmate trust accounts funded exclusively with Veteran's Benefits. Nelson, 271 F.3d 893. In the present case, unlike in Nelson, there were no express overdrafts or holds in plaintiff's account. The CMF Accounting Office did not pay out a requested withdrawal despite insufficient funds,

---

[8] The undersigned does not recommend leave to amend to name the Director, because such amendment would be futile. The injunctive relief that plaintiff seeks is an order prohibiting the prison Accounting Office from "attaching future V.A. benefits." ECF No. 1 at 4. The undisputed facts of this case demonstrate that plaintiff has not been subjected to an "attachment" of benefits. The processing of plaintiff's various Withdrawal Orders does not implicate 38 U.S.C. § 5301(a)(1), which permits prison officials to process withdrawals of V.A. benefits as long as the inmate's account has a sufficient balance when the withdrawal is directed and when the funds are withdrawn. Nelson, 271 F.3d 896.

1 or, as in Nelson, place a hold on plaintiff's account to ensure repayment of an "overdraft" with
2 anticipated deposits. Rather, it appears that the Accounting Office merely processed deposits and
3 withdrawals in plaintiff's ITA as they were submitted. A reasonable person would not have
4 construed this conduct to constitute an attachment, levy or seizure of plaintiff's Veterans Benefits.

5 The Ninth Circuit emphasized in Nelson itself that "we are dealing with the overdraft
6 issue only." Nelson, 271 F.3d at 895 n.5. The narrow scope of Nelson's holding was
7 subsequently restated as follows:

> [R]ecently, we decided Nelson v. Heiss, 271 F.3d 891 (9th Cir. 2001), holding that prison officials could not use veterans' benefits to satisfy overdrafts on an inmate's prison trust account. . . . [W]e rejected the notion that Nelson had consented to using his veterans' benefits to pay for an overdraft by the mere act of drawing on his account when it had insufficient funds.

12 Lopez v. Washington Mutual Bank, FA, 302 F.3d 900 (9th Cir. 2002).

13 In this case, defendants did not permit an overdraft of plaintiff's ITA, then place a hold on
14 the account to recoup those funds from future Veterans Benefits deposits. On September 19,
15 2012, when plaintiff signed the Withdrawal Order authorizing the $6.80 withdrawal, there was a
16 $19.10 balance in plaintiff's account.[9] Plaintiff's benefits were thereafter deposited on October 3,
17 2012, the day before the Accounting Office processed the challenged Withdrawal Order. Because
18 there were sufficient funds in the account to cover the withdrawal at the time it was authorized,
19 and the funds were already in plaintiff's account when the withdrawal was processed, there was
20 no violation of the statute. See Nelson, 271 F.3d at 896 (statute "does not preclude Nelson from
21 directing that payments be deducted from funds which exist in his account at the time that he
22 issues the direction. Nothing we say here precludes him from currently spending the benefits he
23 has received.").

24 Plaintiff contends that CMF improperly waited to process his September 19, 2012 and
25 September 26, 2012 Withdrawal Orders until October 4, 2012, the day after his "future" VDB
26 ////

---

[9] There were sufficient funds at this time *only* because plaintiff's September 14, 2012 request had not been promptly processed. This point is addressed below.

14

were deposited. [10] On September 14, 2012, when plaintiff requested that a check be issued to Mr. Allread in the amount of $19.10, he thought this would bring the balance in his account to zero. Plaintiff accordingly believed that he would not be responsible for the cost of any legal copies that he requested before his next VDB deposit. In this deliberate manner, plaintiff sought to exercise control over his VDB expenditures, including the strategic exhaustion of his VDB deposits in order to obtain "free" legal copies. However, plaintiff's September 14, 2012 request for issuance of the $19.10 check was not processed until September 21, 2012. As a result, there were sufficient funds in plaintiff's ITA on September 19, 2012, when plaintiff signed the subject Withdrawal Order for $6.80; there were also sufficient funds in plaintiff's ITA on October 4, 2012, when the subject Order was processed. Although plaintiff accuses defendants of manipulating the accounting system in order to evade Nelson, it is plaintiff who attempted to manipulate the accounting system in order to avoid paying for copying. Nothing in the language of the statute or in Nelson gives plaintiff a right to do so.

To the extent (if any) that plaintiff raises a non-frivolous issue, unaddressed in Nelson, regarding the application of 38 U.S.C. § 5301(a)(1) to prison trust accounts in light of CMF's practice of processing withdrawal orders out of sequence and/or subject to delay, the ambiguity in the law redounds to defendants' benefit in the qualified immunity context. See Harlow, 457 U.S. at 818 (qualified immunity applies unless defendants' conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"). In the present case, defendants responded to plaintiff's grievance both reasonably and consistently within the statutory requirements of 38 U.S.C. § 5301(a)(1), as construed by the Ninth Circuit in Nelson and by CDCR's Legal Affairs Division as set forth in Legal Opinion No. 2002-00-0259.

---

[10] Review of plaintiff's Inmate Statement demonstrates that the processing dates of those Withdrawal Orders do not coincide with the dates that plaintiff signed them, and the processing of the Orders was not completed in chronological order (e.g., the September 26 Withdrawal Order was processed before the September 19 Withdrawal Order, albeit on the same date). Moreover, defendant Tileston has informed plaintiff and the court that the Accounting Office operates within a thirty-day processing window. Defendants do not explain the sequence or time frame in which the Accounting Office receives and processes inmate Withdrawal Orders, and the court has located none, other than defendants' implicit suggestion that the Office relies on generally accepted accounting principles.

No liability can attach to defendants for conforming to existing law. See Jeffers, 267 F.3d at 910.

## VII. Conclusion

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court is directed to randomly assign a district judge to this action.

Further, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, ECF No. 23, be granted, and judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Due to exigencies in the court's calendar, no extensions of time will be granted.** A copy of any objections filed with the court shall also be served on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 3, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE